NOT DESIGNATED FOR PUBLICATION

No. 116,246

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRAVIS LEE PETERS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed September 8, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Michael F. Kagay*, district attorney, *Jodi Litfin*, deputy district attorney, and *Derek Schmidt,* attorney general, for appellee.

Before MALONE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Travis Peters pled guilty to aggravated sexual battery, a presumptive-prison offense for a person like Peters who had prior person felony offenses. Peters asked the district court at sentencing to give him probation instead of a prison sentence. In the alternative, if the court sent him to prison, he asked for a shorter sentence than called for under our state's sentencing guidelines.

The district court denied the request for probation but granted Peters' request for a shorter prison sentence. Peterson has appealed, contending that the court should have

granted his request for probation or imposed an even shorter sentence. But we cannot overturn the district court's decision on these matters unless no reasonable person could agree with it. See *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011). That's not the case here. The State had already amended the original rape charge (on which he was bound over for trial after evidence was presented at a preliminary hearing) to the lesser offense of aggravated sexual battery—still a very serious offense—and dismissed several other charges. Peters had 23 prior convictions and had 30 write-ups for disciplinary infractions during an imprisonment on his last person felony offense, which took place in 2007. Under these circumstances, the district court's decision is one a reasonable person could agree with.

Peters also argues on appeal that the district court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by including his juvenile adjudications in his criminal history for sentencing purposes. The Kansas Supreme Court rejected that argument in *State v. Fischer*, 288 Kan. 470, 473, 475, 203 P.3d 1269 (2009), and *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732 (2002).

We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2014, the State charged Peters with rape, aggravated criminal sodomy, criminal threat, battery, possession of methamphetamine, and possession of drug paraphernalia. The district court dismissed the possession of methamphetamine charge after hearing evidence at a preliminary hearing, but found sufficient evidence to send the remaining charges to trial. Later, as part of a plea agreement, the State agreed to amend the charges to a single count of aggravated sexual battery in exchange for Peters' guilty plea. The parties also agreed that Peters could request a departure sentence, meaning that he could ask the court to give him probation instead of the presumptive prison sentence

2

and could ask the court to give a sentence shorter than called for under Kansas sentencing guidelines.

At the plea hearing, Peters agreed he had committed the acts that made him guilty of an aggravated sexual battery—intentionally touching the victim, who did not consent, with the intent to arouse either his sexual desires or hers. Based on his plea and admission to these acts, the court found him guilty of aggravated sexual battery.

As expected, Peters filed a motion asking the district court to impose a different sentence than would otherwise be required under the Kansas sentencing guidelines. He asked for a dispositional departure—a request that the district court place him on probation instead of sending him to prison—or, alternatively, for a durational departure—a request for a shorter prison term than the standard term imposed by the Kansas sentencing guidelines. See K.S.A. 2016 Supp. 21-6803(g), (i).

In his motion, Peters discussed several factors he said supported his request. He claimed there were weaknesses in the State's case, including DNA evidence indicating the victim had had sexual contact with some unknown person more recently than she had claimed and said there were other questions regarding the victim's credibility. Peters also noted that three of the four person offenses in his criminal history were juvenile adjudications for person crimes from 1998 and that he had only one later adult conviction for a person felony, in 2007. Based on this, he argued that his criminal-history score (in the most serious category since he had three or more person-felony offenses) was largely based on old adjudications. Peters said that he was actively participating in religious activities while incarcerated, which was helping "to bring him inner peace."

At sentencing, the district court confirmed that Peters' criminal-history score was an A, the most serious criminal-history score, based on his three juvenile adjudications

3

for person felonies and the 2007 adult conviction for burglary of a dwelling (a person felony). Neither party objected.

Before we go further, let's review a few of the rules governing criminal sentences in Kansas. Under the Kansas Sentencing Guidelines Act, most sentences for felony crimes are determined by consulting a sentencing grid. The district court uses a defendant's criminal-history score and the severity level of the current conviction provided in the criminal statute to determine the appropriate sentence on the grid. See K.S.A. 2016 Supp. 21-6804(c). A defendant's criminal-history score is based on the number and type of prior adult convictions and juvenile adjudications the defendant has. See K.S.A. 2016 Supp. 21-6809.

Most crimes in Kansas are classified by statute as one of two types—person or nonperson. See, e.g., K.S.A. 2016 Supp. 21-5505(c)(2) (defining aggravated sexual battery as a severity-level 5 person felony). Defendants with any person felonies—crimes usually involving harm to people—have higher criminal-history scores than those with just nonperson felonies—crimes usually involving harm to property. See K.S.A. 2016 Supp. 21-6809; *State v. Keel*, 302 Kan. 560, 574-75, 357 P.3d 251 (2015). The higher the defendant's criminal-history score, the greater the resulting sentence on the sentencing grid. See K.S.A. 2016 Supp. 21-6804(a). A criminal-history score of A (the highest of nine categories) means the defendant has three or more prior convictions or adjudications for person felonies. K.S.A. 2016 Supp. 21-6809.

In addition to the arguments he had made in his motion, Peters presented letters of support from his wife and mother-in-law asking the court to impose a shorter sentence. The State responded that Peters' reasons weren't substantial and compelling reasons to justify departing from the sentencing guidelines. The prosecutor noted that while Peters had been in prison from 2008 until sometime in 2010 for the burglary conviction, he had received 30 write-ups for disciplinary infractions. The State also noted that when Peters

4

was released on parole, he absconded rather than properly reporting to his parole officer. Given Peters' 23 prior convictions, the State argued that he showed "a consistency in criminal conduct" that didn't merit a departure sentence.

The district court denied Peters' request for probation but agreed to impose a shorter prison sentence. The court concluded that the only substantial and compelling factor was the age of the juvenile adjudications, so it decided to give Peters "a very minor reduction, due to the dated criminal history." Ultimately, the court decided to sentence Peters as though he had a criminal-history score of B, which amounted to a 120-month sentence instead of the standard sentence of 130 months that otherwise would have applied.

Peters then appealed to our court.

ANALYSIS

Peters first argues that the district court should have granted his request for probation or imposed an even shorter prison sentence. He contends that he provided substantial and compelling reasons to justify granting his requests. State responds that the district court did not abuse its discretion in denying the requests.

Under K.S.A. 2016 Supp. 21-6820(a), a defendant may appeal a departure sentence, even one favorable to him or her. See *State v. Looney*, 299 Kan. 903, 908, 327 P.3d 425 (2014). We review a challenge to the extent of a departure for abuse of discretion. *State v. Spencer*, 291 Kan. 796, 807-08, 248 P.3d 256 (2011). A district court abuses its discretion when it bases its decision on an error of fact or law or when no reasonable person would have agreed with the district court's decision. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). Peters has not argued that the district court

5

made a factual or legal error; he can succeed on appeal only if no reasonable person would have agreed with the district court's decision.

Under the Kansas Sentencing Guidelines Act, a district court must impose the presumptive sentence provided in the sentencing grid unless it finds substantial and compelling reasons to impose a departure sentence. K.S.A. 2016 Supp. 21-6815(a). In this context, "substantial" means "something that is real, not imagined, something with substance and not ephemeral; the term 'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary.'" *State v. Jolly*, 301 Kan. 313, Syl. ¶ 9, 342 P.3d 935 (2015).

K.S.A. 2016 Supp. 21-6815(c)(1) provides a nonexclusive list of mitigating factors that a district court may consider in determining whether substantial and compelling reasons exist. A court may consider other factors so long as evidence in the record supports the factors and "the use of the factors would be consistent with the intent and purposes of the sentencing guidelines." *State v. Hines*, 296 Kan. 608, Syl. ¶ 3, 294 P.3d 270 (2013). But even if substantial and compelling reasons would justify granting a departure, the district court is not required to do so. See K.S.A. 2016 Supp. 21-6818(a) ("When a departure sentence is appropriate, the sentencing judge *may* depart from the guidelines." [Emphasis added.]); *State v. White*, No. 113,915, 2016 WL 4063967, at *2 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. ___ (June 2, 2017).

The district court did not abuse its discretion in reducing Peters' sentence by only 10 months and by denying his request for probation. The court rejected Peters' arguments regarding the weaknesses in the case and the plea negotiations in large part because Peters chose to plead to a less serious charge despite whatever defenses or other advantages he would give up. In addition, Peters admitted that he had committed the aggravated sexual battery for which he was convicted. The court granted only a minor reduction in the prison sentence after balancing the fact that Peters' juvenile adjudications

6

were "pretty old" with the fact that he had "quite a bit of other criminal history." In fact, Peters' criminal history included four person felonies, three nonperson felonies, and three nonperson misdemeanors. He was also written up 30 times for disciplinary violations while in prison for the 2007 burglary conviction. Given all of this, a reasonable person could agree with the district court's decision, so we find no abuse of discretion.

Peters also argues that because the juvenile code did not guarantee him the right to a jury trial, the district court could not use his 1998 juvenile adjudications to increase his criminal-history score and resulting sentence without violating his constitutional rights under the United States Supreme Court's decision in *Apprendi*. But our Supreme Court has repeatedly held that the use of juvenile adjudications in calculating a defendant's criminal-history score does not violate *Apprendi*.

In *Apprendi*, the United States Supreme Court held that because of the Sixth Amendment right to a jury trial, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Drawing on past precedent, the Court reasoned that prior convictions could be used to increase a defendant's sentence because of the procedural safeguards associated with securing a conviction. 530 U.S. at 488.

In *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002), our Supreme Court held that juvenile adjudications count as prior convictions for purposes of *Apprendi* and could be used to increase a defendant's criminal-history score and resulting sentence. 273 Kan. at 236. The defendant in *Hitt* argued that juvenile adjudications should fall outside the prior-conviction exception in *Apprendi* because juvenile adjudications, unlike adult convictions, resulted from proceedings in which there was no right to a jury trial. 273 Kan. at 226. The *Hitt* court rejected that argument and concluded that the *Apprendi* exception for prior convictions included juvenile adjudications because of the historical

7

role of recidivism in sentencing decisions and the ample procedural safeguards associated with adjudications. 273 Kan. at 236.

Peters acknowledges that the issue was decided against his position in *Hitt* but argues the case was wrongly decided. Of course, that's not an argument we can consider unless the Kansas Supreme Court has given some indication that it is departing from its earlier decision. *State v. Medina*, 53 Kan. App. 2d 89, 98, 384 P.3d 26 (2016). We see no such indication: Our Supreme Court has continued to follow *Hitt*. See, e.g., *State v. Waller*, 299 Kan. 707, 728-29, 328 P.3d 1111 (2014); *State v. Harris*, 293 Kan. 798, 818, 269 P.3d 820 (2012).

Peters also claims that *Hitt* is no longer good law in light of the Kansas Supreme Court's recognition of a constitutional right to a jury trial in juvenile cases in *In re L.M.*, 286 Kan. 460, 470, 186 P.3d 164 (2008), so his adjudications should not be used to calculate his criminal-history score. The Kansas Supreme Court rejected that argument in *State v. Fischer*, 288 Kan. 470, 473, 475, 203 P.3d 1269 (2009). *Fischer* held that *Hitt* remained valid for all juvenile adjudications that were final on June 20, 2008, the date *In re L.M.* was filed. 288 Kan. at 475. The court recognized that at the time the defendant was adjudicated, she had "received all of the process she was due and was afforded all of the constitutional protections then required in such proceedings." 288 Kan. at 475. Because Peters' juvenile adjudications were final long before June 20, 2008, *Hitt* applied to his case. Accordingly, the district court properly considered Peters' juvenile adjudications in calculating his criminal-history score and did not violate Peters' constitutional rights.

We affirm the district court's judgment.